VALKYRIE LAW GROUP, P.C.
HEATHER L. BLAISE, ESQ. (SBN 261619)
1 N. State Street, Suite 1500
Chicago, IL 60602
Telephone: 312-448-6602
Email: hblaise@valklaw.com

Attorneys for Plaintiff,
MATTHEW MICHAEL HOBBS

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MATTHEW MICHAEL HOBBS, an individual,<br><br>Plaintiff,<br><br>v.<br><br>LG ELECTRONICS U.S.A., INC., a Delaware corporation,<br><br>Defendant. | CASE NO: __________<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND VIOLATIONS OF THE D.M.C.A.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff MATTHEW MICHAEL HOBBS, an individual ("Hobbs"), by and through his attorneys, Valkyrie Law Group, P.C., as and for his Complaint for Copyright Infringement and Violations of the D.M.C.A. against Defendant LG ELECTRONICS U.S.A., INC., a Delaware corporation ("Defendant" or "LG"), states as follows:

## NATURE OF THE ACTION

1. This is an action to remedy Defendant's unauthorized commercial exploitation of Hobbs' copyrighted works, both entitled "Cheese Tax," including the sound recording and the underlying musical composition (collectively, the "Works"), on Defendant's corporate TikTok account; to remedy Defendant's falsification and

alteration of the copyright management information conveyed with the Works, which attributed Hobbs' Works to Defendant; and to recover damages for Defendant's willful conduct.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338 (federal question).

3. This Court has personal jurisdiction over Defendant in that, among other things, Defendant does business in this Judicial District, including by marketing and selling its consumer electronics and home appliances to consumers in this Judicial District, and Plaintiff does business and is suffering harm in this Judicial District.

4. Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b)-(d) and 1400(a).

**THE PARTIES**

5. Plaintiff MATTHEW MICHAEL HOBBS ("Plaintiff," "Hobbs") is an individual and citizen of Georgia, domiciled in Tucker, Georgia.

6. Plaintiff is an award-winning songwriter, multi-instrumentalist, vocalist, and producer, and is famous as the creator of Puppy Songs.

7. Puppy Songs is a collection of nearly 200 original songs that tell stories about life with a dog, including dozens of viral hits such as "Big Stretch," "When Mom Comes Home," "Stuck on My Teefs," and the global mega-hit "Cheese Tax."

8. Plaintiff has an extensive background in advertising with experience collaborating with brands and agency teams, and recently collaborated with brands such as BarkBox, Purina, Petco, DoorDash, and Earth Rated.

9. Defendant LG ELECTRONICS U.S.A., INC. ("Defendant," "LG") is a Delaware corporation with its headquarters located at 111 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

10. Defendant markets and sells consumer electronics and home appliances, including refrigerators, throughout the United States, including in California and this

Judicial District.

11. Defendant operates a verified social media page through the TikTok platform under the TikTok handle @lgusa, which it uses to advertise and promote its brand and products.

12. TikTok, Inc. is a California corporation, and has its principal place of business in Culver City, California.

13. Defendant knew that the impact of its use of the TikTok platform would therefore be aimed at the Central District of California, as the TikTok platform and the company that owns it are located in the forum.

14. Further, Defendant knew that its marketing on the TikTok platform would reach consumers in the Central District of California.

## **FACTS RELEVANT TO ALL COUNTS**

### A. TikTok

15. TikTok is a social media and entertainment platform that allows users to view, create, and share short videos.

16. The TikTok App is one of the world's most popular social media platforms, with nearly 1.6 billion monthly active users across the globe.

17. TikTok users can publish videos for others' viewing, including videos that they make themselves, and can apply filters and visual effects using the app's technology.

18. TikTok also displays a curated feed of video content based on the users' viewing preferences, as well as advertisements.

19. Users who create accounts are given personal profile pages that display their username and posted content.

20. While TikTok's primary function involves video creation and viewing, it also contains a custom "in-app browser" that enables users to view external websites.

21. TikTok directs users to these third-party websites in several different ways: 1) presents users with video ads in their feeds that include links to an advertised

product or service's website; and 2) users who have at least 1,000 followers can add links to external websites on their personal profiles, a feature that influencers, businesses, and organizations routinely use to direct viewers to their brands and products.

22. When users tap on these ads or links while using the TikTok, the in-app browser opens these links internally within the TikTok App instead of transferring them to a separate web browser on the user's device such as Google Chrome or Safari.

23. When users create videos on TikTok, they have the ability to add recommended music through the in-app music library, which includes trending audio clips.

24. TikTok trends are viral phenomena that spread across the TikTok platform, driven by user participation in challenges, hashtags, dance routines, memes, or audio clips.

25. These trends often begin with individual creators who upload content featuring a particular theme, concept, or challenge.

26. As users discover these posts, they may replicate or remix the content, making it their own by adding personal twists.

27. The spread of these trends is facilitated by TikTok's algorithm, which prioritizes content based on engagement metrics (e.g., likes, comments, shares, and watch time).

28. The more engaging the content, the more likely it is to appear on a user's "For You" page, thus reaching a broader audience.

29. This creates a snowball effect, where trends quickly gain momentum and visibility across the platform.

30. Corporations, like Defendant here, seeking to capitalize on the popularity of trends, may participate in these viral challenges or meme formats by incorporating third-party copyrighted works into their videos.

31. TikTok trends frequently revolve around popular songs or audio clips,

which may be copyrighted.

32. TikTok provides a commercial library for corporations to use without obtaining additional licenses from rightsholders.

33. The terms of TikTok's commercial library are as follows:

• These "Commercial Music Library Terms" (the "Terms") apply to the use of sounds (music and non-music) selected from TikTok's "Commercial Music Library" (the "CML"), whether via the TikTok mobile app, web application or TikTok Creative Center website. Sounds selected from the CML will be referred to in these Terms as "Commercial Sounds".

• In addition to the CML being accessible by individual users, the CML and Commercial Sounds are also made available to brands, businesses, commercial entities and advertisers (collectively, "Business Users") for inclusion in videos for posting on TikTok, which may include, but not be limited to the following types of uses: • The association of a Commercial Sound with a brand, logo or trademark or other brand identifying characteristics. • Advertising, marketing, endorsing, sponsoring or publicizing (including so-called paid "hashtag challenges") a product and/or service on TikTok.

These types of uses will be referred to as "Commercial Uses".

If you engage in Commercial Uses, you acknowledge and agree to the following terms:

• You may only post or share videos that include Commercial Sounds within TikTok and by using the sharing features made available to TikTok users. Commercial Uses outside of TikTok are not permitted and no rights are granted by TikTok for such uses. Any uses outside of TikTok are subject to you obtaining separate permission and licensing the necessary rights directly from the Commercial Sound rights

holder(s). These types of outside uses include, but are not limited to, posting videos on third party digital platforms and inclusion of Commercial Sounds in audio or audiovisual content on television, radio and in theatrical media.

• You are not permitted to make available, distribute, or perform the Commercial Sounds separately from the videos into which you have incorporated the Commercial Sound.

• You are not permitted to use Commercial Sounds in an illegal manner or in any way that violates the rights of third parties, or in connection with any content that is illegal or otherwise violates TikTok's "Terms of Service" (including any associated "Community Guidelines"). In addition, some of the Commercial Sounds may be subject to additional requirements and/or restrictions, as further specified in the CML. You agree to comply with these additional requirements when you use Commercial Sounds.

• Commercial Sounds are the only sounds made available on TikTok for Commercial Uses. Otherwise, no rights are granted to make Commercial Uses of any other sounds (music and non-music) on or through TikTok.

• Commercial Sounds designated as "Premium" ("Premium Tracks") may be subject to an additional fee for their use. The exact amount may vary and the calculation of any associated fee for use of a Premium Track will be displayed at the time you purchase the applicable ad inventory. Except as described in this paragraph, all other terms and conditions applicable to Commercial Sounds also apply to Premium Tracks.

• With respect to Commercial Uses by Business Users, each such Business User hereby grants to TikTok and its affiliates the right to

provide data reporting to the rights holders of the Commercial Sounds used by the Business User in each instance. This data may include the number of views, creations, likes, followers, Business User platform account name, country of the Business User's home offices and industry in which the Business User operates, the campaign name(s) and Business User's targeted audience data, which may include, but may not be limited to, gender, personal interests and geo-location. Any data shared by TikTok pursuant to this paragraph will at all times be subject to all applicable privacy and data sharing laws and regulations.

• You (including Business Users) are responsible for any claims and disputes that arise from (i) your failure to adhere to and abide by these Terms, the "TikTok for Business Commercial Terms of Service" or TikTok's "Terms of Service"; (ii) your unauthorized use of Commercial Sounds (wherever or however accessed); and (iii) your unauthorized, unlicensed use of sounds contained in the non-commercial "General Music Library" made available to personal users of TikTok. In the event of any such claim, including any complaint, investigation, dispute, litigation or arbitration brought against TikTok and/or its affiliates, you shall indemnify and hold harmless TikTok and its affiliates from and against each such claim.

• If you access the CML or Commercial Sounds through the TikTok Creative Center web portal (and not via the TikTok mobile application), you must pay attention and adhere to the "Usable Placements" designation with respect to each Commercial Sound in order to select the appropriate Commercial Sound for your planned use. Commercial Sounds may only be used on designated platforms, which are listed in the "Usable Placements" section of the web portal version of the CML. To use Commercial Sounds in videos on media or platforms other than

> the platforms listed under "Usable Placements", you must obtain separate permission from the rights holders, and you are responsible for such permissions and any associated license fees. Any platform not designated under the "Usable Placements" section should be considered not permitted for use of the Commercial Sound in question unless you first obtain the required consents and approvals from the applicable rights holder(s).
>
> • If TikTok, at any time, loses the right, for any reason, to make available a particular sound that was previously available as a Commercial Sound in the CML, TikTok, in its sole discretion, may take down any videos (or any other associated audiovisual content) embodying the Commercial Sound in question or mute the audio so that the Commercial Sound is no longer audible when the video is played. TikTok has no liability to you or any third party with respect to the loss of rights associated with a particular Commercial Sound (and its removal from the CML), or the resulting take down or muting of videos embodying such Commercial Sound.

Commercial Music Library – User Terms, TIKTOK (2026), https://www.tiktok.com/legal/page/global/commercial-music-library-user-terms/en (last visited Oct. 12, 2026).

34. While TikTok provides its Commercial Music Library for users to select from, corporations often bypass proper licensing arrangements by using unlicensed copyrighted audio in their commercial videos.

35. In repurposing user-generated content and/or influencer videos that feature copyrighted works, corporations often exploit content without obtaining the necessary rights to use such content.

36. TikTok's Music Terms of Service provides in pertinent part:

> TikTok offers its users a library of licensed music from which songs may be selected for inclusion in videos. If you include in your video a

song that was not chosen from the licensed library, then you confirm that you are the creator of that music and/or that you have all the rights and permissions needed to use that music in your video. Except as expressly set out in these Music Terms, you acknowledge that no rights in the music—either in the sound recordings or the underlying compositions embodied in them—are licensed to you under the TikTok Terms of Service or these Music Terms.

[…]

Below we describe some ways that you may choose to include music in your videos. In short, you should only include music in a video if you are sure that you have the rights or permissions to do so.

• Select audio from the general music library. When you upload your video content to TikTok, you can select music from a list of music recordings in our TikTok music library, which we call Sounds. Sounds are made available to individual users to include in their videos, so long as the videos are only for personal entertainment and non-commercial purposes. You shouldn't use a music recording from Sounds for any commercial purpose–including associating the music with, or promoting, a brand or business–unless you have obtained the necessary rights to use the music in that manner.

• Select audio from the commercial music library. You can also select music from the TikTok Commercial Music Library, which we call Commercial Sounds. Unlike Sounds, Commercial Sounds are made available to brands, businesses, commercial entities, advertisers or other Platform users (including individuals) that may be using the Platform for commercial purposes (collectively defined as a "Commercial User"). Music recordings selected from the Commercial Music Library can be used to promote a brand or for other commercial

purposes. Your use of the Commercial Sounds is governed by the Commercial Music Library Terms here.

• Upload your own music. Finally, you can also upload audio from your own personal device, such as audio that contains music we've licensed for use on the Platform or your own original work, by including such music directly in your TikTok video ("Original Sounds"). Your use of Original Sounds is governed by the TikTok Terms of Service. **If you're a Commercial User, you should not use an Original Sound uploaded by another user. If you're a Commercial User and you upload an Original Sound to your video, you confirm that (i) you own all the rights to the music included in the video; or (ii) the music is otherwise permitted by law; or (iii) you have permission from all necessary rights holders to use the Original Sound on the Platform.**

[…]

Music is part of the TikTok experience. But, to use music on our Platform, you must follow a few rules.

• Non-commercial uses. Unless you've selected a sound from our list of Commercial Sounds, music should only be used for personal, non-commercial purposes. Any other use of music to sponsor, promote, co-brand or advertise or in a way that creates an association between the music and a brand, product, good or service is prohibited unless you have obtained separate permissions and all necessary rights.

• Short-form uses. Our global music license agreements may require us to place limits on the duration of music that can be used in your video. While specific limitations vary, uses of music up to one minute in length are generally permitted.

• No alterations or modifications. You can not edit or alter the

fundamental character of any copyrighted music, unless you created the underlying music or otherwise have the rights or permissions to do so.

• No stand-alone audio. You should not use music separately as stand-alone audio without an accompanying video.

• No illegal uses. Don't use music in an illegal manner, in connection with illegal content, or in violation of our Community Guidelines. In addition, music shouldn't be used in a political context or for political purposes unless you have separately obtained permission from all of the rights holders to do so.

• Sharing videos on third-party platforms. In some cases, you may be able to share TikTok videos to third-party platforms through our service. If you do share your TikTok video to a third-party platform, your TikTok video would be subject to the terms and conditions of that third-party platform.

Music Terms of Service, TIKTOK (2025) https://www.tiktok.com/legal/page/global/music-terms-eea/en (last visited Oct. 12, 2026) (emphasis added).

37. Defendant is a Commercial User under the terms of the TikTok Music Terms of Service and was on notice that it was not entitled to use any TikTok Original Sound without first obtaining permission from all necessary rights holders.

**B. The Works**

38. The song entitled "Cheese Tax" is a sound recording and a musical composition including lyrics and music created by Plaintiff that was first published on February 28, 2023 (collectively referred to as the "Works").

39. The Works were registered with the U.S. Copyright Office on March 13, 2023, Registration No. SR 973-739. *See* **Exhibit A**, Registration.

40. However, the Works are not available on TikTok for commercial use, as they do not appear in TikTok's Commercial Music Library.

41. Following Plaintiff's first publication of the Works on Plaintiff's

@puppysongs profile on the TikTok platform, the song became viral and Plaintiff received thousands of notifications daily of comments, likes, shares, tags, etc.

42. Furthermore, "Cheese Tax" was used in tens of thousands of user-created posts because of its popularity.

43. On the TikTok platform, the Works are identified by a sound page that identifies Plaintiff, through his @puppysongs account, as the source of the audio displayed as Cheese Tax. When a TikTok user creates a video using the Works from that sound page, TikTok identifies the audio in that video by the Works' title and Plaintiff's name and links the video back to Plaintiff's sound page.




44. The identification of the Works' title and author that TikTok conveys with each video that uses the Works constitutes copyright management information ("CMI") within the meaning of 17 U.S.C. § 1202(c), because it is information identifying the Works, including the title of the Works and the name of and other identifying information about the author and copyright owner of the Works, conveyed in connection with copies, performances, and displays of the Works.

**C. Defendant's Infringing Video**

45. On March 21, 2023, Defendant posted a TikTok video on its verified commercial TikTok page, @lgusa, which included the Works as its audio (hereinafter the "Infringing Video"). *See* https://www.tiktok.com/@lgusa/video/7213066946416413998; *see also* **Exhibit B**, Screenshot of Infringing Video.

46. The Infringing Video depicts a dog at an open refrigerator, set to the Works.

47. The Infringing Video was not created by Defendant. The Infringing Video bears a TikTok watermark identifying the TikTok user "@vito.the.boxer," a watermark that TikTok applies to videos that are downloaded from the TikTok platform, and

Defendant's caption for the Infringing Video begins by tagging "@vito.the.boxer."

48. Upon information and belief, Defendant downloaded a video posted by the TikTok user @vito.the.boxer that featured the Works, and then uploaded that video to Defendant's own commercial TikTok page as a new post, rather than selecting the Works from TikTok's Commercial Music Library or otherwise obtaining a license to use the Works.

49. Whatever permission, if any, Defendant obtained from @vito.the.boxer did not and could not extend to the Works. The user @vito.the.boxer does not own the Works and has no right to license the Works to anyone, and Plaintiff has never authorized @vito.the.boxer or Defendant to use the Works for any commercial purpose.

50. The Infringing Video received at least 2,938 views, 84 likes, 11 comments, 5 saves, and 1 share on TikTok.

51. The audio for the Infringing Video was identified publicly by Defendant falsely as Defendant's original sound, and the sound icon displayed with the Infringing Video bears Defendant's LG logo, despite the fact that the sound is not Defendant's TikTok Original Sound, and was instead Plaintiff's Works:



52. By uploading the Infringing Video as its own post with its own "original sound," Defendant replaced the true CMI identifying the Works' title and Plaintiff as the Works' author with false CMI identifying Defendant as the source of the audio, and severed the Infringing Video from Plaintiff's sound page for the Works.

53. Defendant willfully and knowingly infringed the Works in the Infringing Video, and Defendant included false CMI identifying the Works as an original work of Defendant.

54. Defendant did not obtain any license or authority from Plaintiff to use the Works in the Infringing Video posted on Defendant's commercial TikTok page described above.

55. In order to synchronize the Works to an audiovisual work in the manner that Defendant has done, Defendant would have needed both a synchronization license for the musical composition and a master use license for the sound recording to avoid infringing Plaintiff's exclusive rights, including the reproduction, derivative work, distribution, public performance, and public display rights.

56. The Infringing Video remained publicly available on Defendant's TikTok page, and was publicly performed and displayed to TikTok users, from March 21, 2023 until on or about April 24, 2026, including throughout the three years preceding the filing of this Complaint.

**D. Defendant's Intentional Infringement**

57. As the owner of the copyrights in the Works under 17 U.S.C. § 106, Plaintiff has the exclusive right to: make copies (17 U.S.C. § 106(1), to reproduce the copyrighted work in copies or phonorecords); create derivative works (17 U.S.C. § 106(2), to prepare derivative works based upon the copyrighted work); distribute (17 U.S.C. § 106(3), to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending); perform the Works publicly (17 U.S.C. § 106(4), in the case of musical works, to perform the copyrighted work publicly); display the Works publicly (17 U.S.C. § 106(5)); and, in

the case of sound recordings, perform the copyrighted work publicly by means of a digital audio transmission (17 U.S.C. § 106(6)).

58. Plaintiff discovered the Infringing Video on April 8, 2026.

59. Prior to April 8, 2026, Plaintiff did not know and had no reason to know of Defendant's infringement in the Infringing Video. Because Defendant falsely identified the Works as Defendant's own "original sound," the Infringing Video did not appear among the videos linked to Plaintiff's sound page for the Works and did not identify Plaintiff or the Works, which concealed the Infringing Video from Plaintiff.

60. Defendant is a large, sophisticated company with dedicated marketing and social media personnel, and is a Business User and Commercial User under TikTok's Commercial Music Library Terms and Music Terms of Service.

61. Defendant hoped to capitalize on the viral popularity of the Works by including them in the Infringing Video.

62. The Works were not accessible in the TikTok Commercial Music Library for Defendant to select to include in the Infringing Video.

63. To use the Works in the Infringing Video, Defendant took the Works from a non-commercial, user-generated video that featured the Works and uploaded the Infringing Video falsely designating the Works as authored by Defendant, in order to exploit the Works without obtaining the necessary rights to use the Works, in violation of TikTok's terms as delineated in Paragraphs 33 and 36–37, above.

64. At the time that Defendant uploaded the Infringing Video identifying the Works falsely as Defendant's original sound rather than as Plaintiff's Works, Defendant knew it did not create or own the Works. Indeed, Defendant's own caption tagged a third party, @vito.the.boxer, as the source of the video, confirming that Defendant knew the content, including its audio, was not Defendant's original creation.

65. Defendant knew or should have known that CMI is used by the TikTok platform to identify content, to attribute content to its creators, and to identify and remove infringing content.

66. By uploading the Works under false CMI, Defendant knew or had reason to know that it was evading the TikTok platform's primary mechanism of copyright enforcement and was falsely representing to the TikTok platform and the public at large that it was the owner of the Works.

67. This false identification of the Works as Defendant's original sound was in furtherance of Defendant's efforts to conceal its knowledge that it did not own the Works and was not authorized to use the Works, and to evade the TikTok platform's copyright enforcement system.

68. In circumventing the TikTok Commercial Music Library requirements, Defendant falsified the CMI of the Works by attributing the Works to LG, both to commit and to conceal the infringement despite the safeguards in place on the TikTok platform to prevent the same.

69. When Defendant created and uploaded the Infringing Video, Defendant knew the CMI was false, and Defendant knew or had reasonable grounds to know that the false CMI would induce, enable, facilitate, and conceal infringement.

70. Defendant uploaded the Infringing Video with false CMI on TikTok for advertising purposes, with the hope that consumers would engage with its content and participate in viral trends using the falsely designated sound as Defendant's original sound for additional commercial exposure, including by encouraging additional infringing uses by other TikTok users, as explained in Paragraphs 23–31, above.

71. Defendant was aware or had reasonable grounds to be aware that falsely communicating the CMI of the Works as Defendant's original sound would encourage other TikTok users to use the Works without authorization, and Defendant desired for more TikTok users to use the falsely designated sound to increase Defendant's commercial exposure on TikTok.

72. Plaintiff contacted Defendant on or about April 20, 2026 regarding the infringing use of the Works in the Infringing Video.

73. On or about April 24, 2026, Defendant removed the Infringing Video from

the TikTok platform.

**<u>COUNT I</u>**

**DIRECT COPYRIGHT INFRINGEMENT AS TO THE SOUND RECORDING**

74. Plaintiff incorporates the preceding Paragraphs 1 through 73 of this Complaint as if fully set forth herein.

75. The sound recording embodied in the Works (hereinafter "Sound Recording") is owned and/or controlled by Plaintiff and is an original, creative work and constitutes copyrightable subject matter under the Copyright Act.

76. Plaintiff owned and controlled the copyright to the Sound Recording during the relevant times of Defendant's infringement.

77. Defendant had access to but was not licensed by Plaintiff to use Plaintiff's Sound Recording in the manner Defendant has used the Works.

78. By its actions, Defendant's creation, posting, and distribution of the Infringing Video infringes Plaintiff's copyright because Defendant: 1) reproduced the Sound Recording in violation of 17 U.S.C. § 106(1); 2) prepared derivative works based upon the Sound Recording in violation of 17 U.S.C. § 106(2); 3) distributed copies of the Sound Recording to the public in violation of 17 U.S.C. § 106(3); and/or 4) performed the Sound Recording publicly by means of a digital audio transmission in violation of 17 U.S.C. § 106(6).

79. Through these unauthorized uses, Defendant has unlawfully reproduced, prepared a derivative work, distributed, publicly performed, and/or publicly displayed the Sound Recording in violation of 17 U.S.C. § 106 without any authorization, permission, license, or consent from Plaintiff.

80. Defendant's acts of infringement are knowing, deliberate, and in complete disregard for Plaintiff's rights.

81. Defendant's conduct constitutes willful copyright infringement under 17 U.S.C. § 504(c)(2).

82. Because the Works were registered on March 13, 2023, before Defendant's infringement commenced on March 21, 2023, Plaintiff is entitled to elect statutory damages and to recover his attorneys' fees pursuant to 17 U.S.C. §§ 412, 504(c), and 505.

83. As a direct and proximate result of Defendant's infringement of Plaintiff's copyright and exclusive rights under copyright, Plaintiff is entitled to his actual damages and Defendant's profits directly and indirectly attributable to the infringement pursuant to 17 U.S.C. § 504(b), or, in the alternative, at Plaintiff's election, to statutory damages pursuant to 17 U.S.C. § 504(c) of up to $150,000.00 per infringed work, together with attorneys' fees and costs pursuant to 17 U.S.C. § 505.

84. Plaintiff is also entitled to enhanced statutory damages because Defendant was either actually aware that it did not have the right to use the Sound Recording based on TikTok's Terms of Service and the fact that it did not hold any license from Plaintiff, or Defendant's actions were the result of reckless disregard for, or willful blindness to, Plaintiff's rights.

85. Plaintiff is irreparably harmed by the acts alleged herein and has no adequate remedy at law.

**<u>PRAYER FOR RELIEF AS TO COUNT I</u>**

WHEREFORE, Plaintiff prays for judgment from this Honorable Court in Plaintiff's favor against Defendant:

a) A declaration that Defendant's March 21, 2023 TikTok post has willfully infringed Plaintiff's copyrighted Sound Recording in violation of the Copyright Act;

b) A permanent injunction requiring Defendant and its agents, employees, officers, attorneys, successors, licensees, partners and assignees, and all persons acting in concert with any one of them, to cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of

Plaintiff's rights protected by the Copyright Act pursuant to 17 U.S.C. § 502;

c) An order for impoundment of all copies made or used in violation of the exclusive rights of Plaintiff pursuant to 17 U.S.C. § 503;

d) An order impounding records documenting the manufacture, sale, or receipt of things involved in the acts of infringement pursuant to 17 U.S.C. § 503;

e) For statutory damages pursuant to 17 U.S.C. § 504(c) for Defendant's willful infringement to the greatest extent provided by the Copyright Act, or, in the alternative, at Plaintiff's election, Plaintiff's actual damages and Defendant's profits attributable to the infringement pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial;

f) An order for an accounting and an award of Defendant's profits (including direct and indirect profits) pursuant to 17 U.S.C. § 504;

g) Enhanced statutory damages for willful infringement under 17 U.S.C. § 504(c)(2);

h) A judgment against Defendant awarding Plaintiff his reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505;

i) For pre-judgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against Defendant; and

j) Any and all relief deemed just and appropriate by the Court.

## <u>COUNT II</u>

## DIRECT COPYRIGHT INFRINGEMENT AS TO THE MUSICAL COMPOSITION

86. Plaintiff incorporates the preceding Paragraphs 1 through 73 of this Complaint as if fully set forth herein.

87. The musical composition embodied in the Works (hereinafter "Musical Composition") is owned and/or controlled by Plaintiff and is an original, creative work

and constitutes copyrightable subject matter under the Copyright Act.

88. Plaintiff owned and controlled the copyright to the Musical Composition during the relevant times of Defendant's infringement.

89. Defendant had access to but was not licensed by Plaintiff to use Plaintiff's Musical Composition in the manner Defendant has used the Works.

90. By its actions, Defendant's creation, posting, and distribution of the Infringing Video infringes Plaintiff's copyright because Defendant: 1) reproduced the Musical Composition in violation of 17 U.S.C. § 106(1); 2) prepared derivative works based upon the Musical Composition in violation of 17 U.S.C. § 106(2); 3) distributed copies of the Musical Composition to the public in violation of 17 U.S.C. § 106(3); 4) performed the Musical Composition publicly in violation of 17 U.S.C. § 106(4); and/or 5) displayed the Musical Composition publicly in violation of 17 U.S.C. § 106(5).

91. Through these unauthorized uses, Defendant has unlawfully reproduced, prepared a derivative work, distributed, publicly performed, and/or publicly displayed the Musical Composition in violation of 17 U.S.C. § 106 without any authorization, permission, license, or consent from Plaintiff.

92. Defendant's acts of infringement are knowing, deliberate, and in complete disregard for Plaintiff's rights.

93. Defendant's conduct constitutes willful copyright infringement under 17 U.S.C. § 504(c)(2).

94. Because the Works were registered on March 13, 2023, before Defendant's infringement commenced on March 21, 2023, Plaintiff is entitled to elect statutory damages and to recover his attorneys' fees pursuant to 17 U.S.C. §§ 412, 504(c), and 505.

95. As a direct and proximate result of Defendant's infringement of Plaintiff's copyright and exclusive rights under copyright, Plaintiff is entitled to his actual damages and Defendant's profits directly and indirectly attributable to the infringement pursuant to 17 U.S.C. § 504(b), or, in the alternative, at Plaintiff's election, to statutory

damages pursuant to 17 U.S.C. § 504(c) of up to $150,000.00 per infringed work, together with attorneys' fees and costs pursuant to 17 U.S.C. § 505.

96. Plaintiff is also entitled to enhanced statutory damages because Defendant was either actually aware that it did not have the right to use the Musical Composition based on TikTok's Terms of Service and the fact that it did not hold any license from Plaintiff, or Defendant's actions were the result of reckless disregard for, or willful blindness to, Plaintiff's rights.

97. Plaintiff is irreparably harmed by the acts alleged herein and has no adequate remedy at law.

## PRAYER FOR RELIEF AS TO COUNT II

WHEREFORE, Plaintiff prays for judgment from this Honorable Court in Plaintiff's favor against Defendant:

a) A declaration that Defendant's March 21, 2023 TikTok post has willfully infringed Plaintiff's copyrighted Musical Composition in violation of the Copyright Act;

b) A permanent injunction requiring Defendant and its agents, employees, officers, attorneys, successors, licensees, partners and assignees, and all persons acting in concert with any one of them, to cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of Plaintiff's rights protected by the Copyright Act pursuant to 17 U.S.C. § 502;

c) An order for impoundment of all copies made or used in violation of the exclusive rights of Plaintiff pursuant to 17 U.S.C. § 503;

d) An order impounding records documenting the manufacture, sale, or receipt of things involved in the acts of infringement pursuant to 17 U.S.C. § 503;

e) For statutory damages pursuant to 17 U.S.C. § 504(c) for Defendant's

willful infringement to the greatest extent provided by the Copyright Act, or, in the alternative, at Plaintiff's election, Plaintiff's actual damages and Defendant's profits attributable to the infringement pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial;

f) An order for an accounting and an award of Defendant's profits (including direct and indirect profits) pursuant to 17 U.S.C. § 504;

g) Enhanced statutory damages for willful infringement under 17 U.S.C. § 504(c)(2);

h) A judgment against Defendant awarding Plaintiff his reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505;

i) For pre-judgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against Defendant; and

j) Any and all relief deemed just and appropriate by the Court.

## COUNT III

## FALSE COPYRIGHT MANAGEMENT INFORMATION

## (17 U.S.C. §§ 1202(a), 1203)

98. Plaintiff incorporates the preceding Paragraphs 1 through 73 of this Complaint as if fully set forth herein.

99. The Digital Millennium Copyright Act ("DMCA"), at 17 U.S.C. § 1202(a), prohibits any person from knowingly, and with the intent to induce, enable, facilitate, or conceal infringement, (1) providing CMI that is false, or (2) distributing or importing for distribution CMI that is false.

100. Under TikTok's Terms of Service at the time Defendant posted the Infringing Video, Defendant agreed not to use "create or otherwise use Input or Output in a way that… infringes, violates or misappropriates the rights of… our users, or any third party." Terms of Service, TIKTOK (last updated July 15, 2026), https://www.tiktok.com/legal/page/us/terms-of-service/en (last-visited Oct. 12, 2026).

101. TikTok's Music Terms of Service further provide that a Commercial User

who uploads an Original Sound to a video confirms that it owns all the rights to the music included in the video, that the music is otherwise permitted by law, or that it has permission from all necessary rights holders to use the Original Sound on the Platform.

102. Defendant knows that it is a Commercial User under TikTok's terms, and Defendant knew that it did not have the right to designate Plaintiff's Works as a TikTok Original Sound belonging to Defendant.

103. Defendant does not own the Works and does not have a license to use the Works for any purpose.

104. The Works' true CMI does not appear in the Infringing Video; instead, the Works are falsely identified as Defendant's original sound as shown in Paragraph 51, above.

105. Defendant's identification of the Works as Defendant's original sound is CMI within the meaning of 17 U.S.C. § 1202(c), because it purports to identify the title of the Works and the name of and other identifying information about the author and owner of the Works, and it was conveyed in connection with copies, performances, and displays of the Works.

106. That CMI is false, because Defendant is not the author or owner of the Works.

107. Defendant provided the false CMI by uploading the Works to TikTok as Defendant's own Original Sound, thereby representing to TikTok and to the public that Defendant owned the audio, and Defendant distributed the false CMI each time the Infringing Video was distributed, publicly performed, and publicly displayed to TikTok users between March 21, 2023 and on or about April 24, 2026.

108. Defendant provided and distributed the false CMI knowingly and with the intent to induce, enable, facilitate, and/or conceal infringement of the Works, including for the reasons set forth in Paragraphs 48–73, above. Among other things, the false CMI (a) enabled and facilitated Defendant's own infringement by allowing Defendant to post the Works on its commercial account notwithstanding TikTok's prohibition on

Commercial Users' use of unlicensed sounds; (b) concealed Defendant's infringement from Plaintiff by removing the Infringing Video from the videos associated with Plaintiff's sound page; and (c) induced and facilitated infringement by other TikTok users, who could use the falsely designated sound in their own videos without any attribution to Plaintiff.

109. Each act of providing or distributing false CMI by Defendant is a separate violation of 17 U.S.C. § 1202(a).

110. Defendant's acts violate 17 U.S.C. §§ 1202(a) and 1203.

111. Plaintiff has been damaged by Defendant's violations, and Defendant has earned direct and indirect profits attributable to the violations alleged herein.

112. Plaintiff is irreparably harmed by the acts alleged herein and has no adequate remedy at law.

## PRAYER FOR RELIEF AS TO COUNT III

WHEREFORE, Plaintiff prays for judgment from this Honorable Court in Plaintiff's favor against Defendant and respectfully requests:

a) A declaration that Defendant has violated 17 U.S.C. § 1202(a);

b) A permanent injunction pursuant to 17 U.S.C. § 1203(b)(1);

c) Impoundment of any device or product involved in the violation pursuant to 17 U.S.C. § 1203(b)(2);

d) Plaintiff's actual damages and any additional profits of Defendant attributable to the violations pursuant to 17 U.S.C. § 1203(c)(2), or, at Plaintiff's election, statutory damages pursuant to 17 U.S.C. § 1203(c)(3)(B) of not less than $2,500.00 and not more than $25,000.00 for each violation of 17 U.S.C. § 1202, including each distribution, public performance, and public display of the Works with false or altered CMI;

e) Costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 1203(b)(4)–(5);

f) Remedial modification and/or destruction of any device or product

involved in the violation pursuant to 17 U.S.C. § 1203(b)(6);

g) For pre-judgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against Defendant; and

h) For such other and further relief as this Court deems appropriate.

**COUNT IV**

**REMOVAL AND ALTERATION OF COPYRIGHT MANAGEMENT INFORMATION (17 U.S.C. §§ 1202(b), 1203)**

113. Plaintiff incorporates the preceding Paragraphs 1 through 73 of this Complaint as if fully set forth herein.

114. The DMCA, at 17 U.S.C. § 1202(b), prohibits any person, without the authority of the copyright owner or the law, from (1) intentionally removing or altering any CMI, or (3) distributing or publicly performing works knowing that CMI has been removed or altered without authority of the copyright owner, knowing or having reasonable grounds to know that it will induce, enable, facilitate, or conceal an infringement.

115. Upon information and belief, as posted on the TikTok platform by @vito.the.boxer, the video that Defendant downloaded and re-uploaded conveyed the Works' CMI, identifying the Works by title and identifying Plaintiff as the author of the Works.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /




116. Defendant, without the authority of Plaintiff or the law, intentionally removed and altered that CMI by downloading the video and uploading it to Defendant's commercial TikTok page as a new post with its own Original Sound, thereby replacing the Works' title and Plaintiff's identification with Defendant's original sound.

117. Defendant thereafter distributed, publicly performed, and publicly displayed the Works in the Infringing Video knowing that the Works' CMI had been removed and altered without Plaintiff's authority.

118. Defendant knew or had reasonable grounds to know that removing and altering the Works' CMI would induce, enable, facilitate, or conceal infringement, for the reasons set forth in Paragraphs 48–73, above, including because the removal and alteration enabled Defendant's commercial use of an unlicensed sound on TikTok, concealed the Infringing Video from Plaintiff, and allowed other TikTok users to use the Works without attribution to Plaintiff.

119. Each act of removal or alteration of CMI, and each distribution, public performance, or public display of the Works knowing that CMI had been removed or altered, is a separate violation of 17 U.S.C. § 1202(b).

120. Defendant's acts violate 17 U.S.C. §§ 1202(b) and 1203.

121. Plaintiff has been damaged by Defendant's violations, and Defendant has earned direct and indirect profits attributable to the violations alleged herein.

122. Plaintiff is irreparably harmed by the acts alleged herein and has no adequate remedy at law.

## PRAYER FOR RELIEF AS TO COUNT IV

WHEREFORE, Plaintiff prays for judgment from this Honorable Court in Plaintiff's favor against Defendant and respectfully requests:

a) A declaration that Defendant has violated 17 U.S.C. § 1202(b);

b) A permanent injunction pursuant to 17 U.S.C. § 1203(b)(1);

c) Impoundment of any device or product involved in the violation pursuant to 17 U.S.C. § 1203(b)(2);

d) Plaintiff's actual damages and any additional profits of Defendant attributable to the violations pursuant to 17 U.S.C. § 1203(c)(2), or, at Plaintiff's election, statutory damages pursuant to 17 U.S.C. § 1203(c)(3)(B) of not less than $2,500.00 and not more than $25,000.00 for each violation of 17 U.S.C. § 1202, including each distribution, public performance, and public display of the Works with false or altered CMI;

e) Costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 1203(b)(4)–(5);

f) Remedial modification and/or destruction of any device or product involved in the violation pursuant to 17 U.S.C. § 1203(b)(6);

g) For pre-judgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against Defendant; and

h) For such other and further relief as this Court deems appropriate.

**JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable.

DATED: October 19, 2026

Respectfully submitted,

**MATTHEW MICHAEL HOBBS**

*/s/ Heather L. Blaise*

HEATHER L. BLAISE, ESQ. (SBN 261619)

*Attorney for Plaintiff*